UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JILL ASHLEY FISHER,<br><br>　　　　Plaintiff,<br><br>v.<br><br><br>HNTB CORPORATION, et al.,<br>　　　　Defendants. | Case No. 2:18-cv-08173-AB-MRW<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND** |

**I.　INTRODUCTION**

Before the Court is Plaintiff Jill Ashley Fisher's ("Plaintiff") Motion to Remand this case to state court. (Dkt. No. 16 ("Mot.").) Defendants HNTB Corporation, Amy Turner, and Lisa Ely (collectively "Defendants") filed an opposition. (*See* Dkt. No. 22 ("Opp'n").) Plaintiff filed a reply. (*See* Dkt. No. 23 ("Reply").) The Court heard oral argument on November 30, 2018 and took the matter under submission. Having carefully reviewed the parties' submissions and considered the arguments presented during oral argument, and for the reasons explained below, the Court **DENIES** Plaintiff's Motion to Remand.

## II. BACKGROUND

### A. The Parties

Plaintiff is, and at all relevant times was, a resident of Orange County, California. (Dkt. No. 1 ("Removal"), Ex. 2. ("Compl.") ¶ 1.) HNTB Corporation ("HNTB") is, and at all relevant times was, incorporated in Delaware and has its principal place of business in Missouri.[1] (*See* Removal, Ex. 9, Declaration of Amy Turner ("Turner Decl.") ¶ 3.) Amy Turner and Lisa Ely (collectively, "the Individual Defendants") are, and at all relevant times were, citizens and residents of Kansas.[2] (*See* Turner Decl. ¶¶ 8-9; Removal, Ex. 8, Declaration of Lisa Ely ("Ely Decl.") ¶¶ 3-4.)

### B. Factual Background

This lawsuit involves an employment dispute arising from HNTB's alleged wrongful termination of Plaintiff. (*See generally* Compl.) Plaintiff began working at HNTB as a Senior Administrative Receptionist on December 29, 2014. (Compl. ¶ 8.) In January 2017, HNTB promoted Plaintiff to the position of Senior Administrative Facilities. (Compl. ¶ 9.) Plaintiff alleges that she has Amyotrophic Lateral Sclerosis ("ALS"). (Compl. ¶ 10.)

In June 2017, Plaintiff informed her supervisor, Terrie Breit, that her doctor suspected she had ALS and scheduled surgery on August 2, 2017. (Compl. ¶ 11.) At that time, Plaintiff requested medical leave from July 21, 2017 to October 24, 2017. (*Id.*) Plaintiff's doctor later extended her medical leave to January 30, 2018. (*Id.*)

Plaintiff alleges that while on medical leave, the Individual Defendants, who also worked at HNTB, "required that [Plaintiff's] doctor send proof of her disability, including information regarding her diagnosis and specifics on her condition, every

---

[1] HNTB's citizenship is undisputed.
[2] Plaintiff disputed this fact in the moving papers, arguing the Individual Defendants are, and at all relevant times were, residents of Orange County, California. (Compl. ¶ 2.)

2.

two to four week[s]," which "took a toll on her" by causing her to feel "overwhelmed, stressed, and anxious." (*Id.*) Plaintiff further alleges HNTB terminated her employment on January 25, 2018 because she took medical leave and requested accommodations prior to returning to work. (Compl. ¶ 12.)

### C. Procedural History

Plaintiff initiated this action against Defendants on August 20, 2018 in Los Angeles Superior Court. (*See* Compl.; Opp'n, Declaration of Laura Booth ("Booth Decl.") ¶ 3, Ex. A.) Plaintiff alleges the following six causes of action: (1) violation of the Fair Employment and Housing Act ("FEHA"); (2) breach of express oral contract; (3) breach of implied-in-fact contract; (4) negligent hiring, supervision, and retention; (5) wrongful termination in violation of public policy; and (6) intentional infliction of emotional distress ("IIED"). (*Id.*) The first cause of action for violation of the FEHA and sixth cause of action for IIED are the only causes of action against the Individual Defendants. (*Id.*)

On August 23, 2018, HNTB was served with the summons and complaint. (Turner Decl. ¶ 10; Removal ¶ 6; Opp'n at 6; Booth Decl. ¶ 3, Ex. A.) On September 5, 2018, Amy Turner was served with the summons and complaint. (Booth Decl. ¶ 4, Ex. B.)

On September 20, 2018, HNTB timely removed the action to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Booth Decl. ¶ 5, Ex. C; *see also* Removal.) HNTB simultaneously filed declarations of the Individual Defendants stating they were residents and citizens of Kansas at the time Plaintiff filed the complaint and at the time of removal. (Booth Decl. ¶ 6, Exs. D, E.) In the Individual Defendants' declarations they indicated their consent to removal. (*Id.*)

On September 27, 2018, Turner joined in the removal of this action. (*See* Dkt. No. 13; Booth Decl. ¶ 8, Ex. F.) HNTB also filed a civil cover sheet on September 20, 2018, which indicated that Plaintiff was a citizen of California. (*See* Dkt. No. 2.)

At the time of removal, Ely had not been served with the summons or complaint, but she consented to removal in her declaration filed with the Notice of Removal. (Booth Decl. ¶ 7, Ex. E; Ely Decl. ¶¶ 5-6.) Ely was not served until on or about October 18, 2018. (Booth Decl. ¶ 9.) On October 31, 2018, Ely joined in the removal of this action. (*See* Dkt. No. 18; Booth Decl. ¶ 10, Ex. G.)

On October 17, 2018, Plaintiff filed the instant Motion to Remand. (Removal at 1.) Defendants filed an opposition on November 9, 2018, and Plaintiff filed a reply on November 16, 2018. (*See* Opp'n; Reply.)

### III. LEGAL STANDARD

Under 28 U.S.C. § 1441(a), a civil action may be removed to the district court where the action is pending if the district court has original jurisdiction over the action. Under 28 U.S.C. § 1332, a district court has original jurisdiction of a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the dispute is between "citizens of different states." Section 1332 requires complete diversity, i.e., that "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67-68 (1996). Section 1441 limits removal to cases where no defendant "properly joined and served . . . is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(a)(b)(2). Section 1446(b) governs the timeliness of removals. If the case stated by the initial pleading is "removable on its face," then a defendant has thirty days from receipt of the pleading to remove the case. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 884-85 (9th Cir. 2010).

Removal statutes are "strictly construe[d] against removal." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance. *Id*. Accordingly, the removing party bears a heavy burden of establishing original jurisdiction in the district court. *Id*.

## IV. DISCUSSION

In the moving papers, Plaintiff provides three principal arguments in support of remand: (1) Defendants failed to establish complete diversity between Plaintiff and Defendants; (2) Defendants failed to establish that the amount in controversy exceeds $75,000; (3) HNTB removed the action before Plaintiff had served any defendant. (*See generally* Mot.)

### A. Obligation to Meet and Confer

The Court reminds the parties that Local Rule 7-3 requires counsel to meet and confer at least seven days prior to filing a motion in a civil matter. To satisfy Local Rule 7-3, counsel must first "contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." If the moving party does not comply with Local Rule 7-3, the Court may refuse to hear the motion. *See, e.g.*, *Singer v. Live Nation Worldwide, Inc.*, No. SACV 11-0427 DOC (MLGx), 2012 WL 123146, *2 (C.D. Cal. Jan. 13, 2012) (denying motion due to the movant's failure to abide by Local Rule 7-3).

After reading the communications attached as Exhibit 2 to Plaintiff's counsel's declaration in support of Plaintiff's Motion to Remand, the Court concludes that Plaintiff has not complied with Local Rule 7-3. In reference to the Motion to Remand, Plaintiff's counsel sent an email to defense counsel on September 27, 2018 that stated "[w]e intend on filing a motion to remand for this matter on the basis that the matter was removed before Plaintiff had a chance to serve all the entities involved. Please let us know if you will agree to remand the matter without our filing of the motion." (Mot., Declaration of Kristina Unanyan, Ex. 2.) On September 28, 2018, defense counsel responded, stating "[w]e believe we removed on proper grounds and we will not agree to remand the action." (*Id.*)

The parties made no effort to "thoroughly" discuss "the substance of the contemplated motion," as required by the local rules. The majority of the arguments in the motion to remand are unnecessary and could have easily been resolved without

court intervention.[3] Although the Court, in its discretion, will nonetheless rule on the merits of the dispute, any future failure to engage in the required meet-and-confer process, including the requirement to "thoroughly" discuss "the substance" of the contemplated motion, will result in appropriate sanctions.

### B. The Complete Diversity Requirement Is Satisfied[4]

Plaintiff's argument with respect to complete diversity is two-fold: First, Plaintiff argues that Defendants have not met their burden to establish that Plaintiff is a citizen of California because the complaint alleges only Plaintiff's residence. (Mot. at 6-7, 10-12.) Second, Plaintiff argues the Court lacks original jurisdiction because, among other things, there is not complete diversity between Plaintiff, a citizen of California, and the Individual Defendants, who Plaintiff contends are citizens of California. (Mot. at 7.)

A natural person's citizenship is determined by state of domicile, not residence. "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Plaintiff alleges that she resides, and has resided during all relevant times, in California. (*See* Compl. ¶ 1.) That is, Plaintiff affirmatively alleges she has been a resident of California from at least 2014 (when alleges she began working for HNTB) through the present. Plaintiff's contention that more than four years of living and working exclusively in California is insufficient to establish California is Plaintiff's "permanent home" is unavailing. As Defendants note in their opposition, this finding is consistent with Plaintiff's allegation that she worked for HNTB in Orange County, California from December 29, 2014 through January 25,

---

[3] For example, it was unnecessary for Plaintiff to devote seven pages of her motion arguing the Individual Defendants are not sham defendants when the Individual Defendants' declarations clearly state they are, and at all relevant times were, residents and citizens of Kansas. Had the parties discussed the merits of the motion, Plaintiff would have known the sham defendant rule was not at issue.

[4] At the hearing on the motion to remand, Plaintiff conceded complete diversity exists.

2018 (Compl. ¶¶ 1-2, 8-12), as well as Plaintiff's moving papers in which she states she is a "Californian[]." (Mot. at 7; Opp'n at 5, 7-9; Reply at 5.) Plaintiff has neither presented evidence nor made statements to the contrary. *See Lopez v. Nationstar Mortg. LLC*, No. CV-15-03288-MWF (AJWx), 2015 WL 6478263, at *2 (C.D. Cal. Oct. 26, 2015) ("Plaintiff alleges in the [First Amended Complaint] that his primary place of residence is in Diamond Bar, California. In the absence of evidence to the contrary, Plaintiff is considered a citizen of California for federal diversity purposes."). Therefore, the Court concludes that Plaintiff is a citizen of California.

Plaintiff argues, "even if [Defendants] ha[ve] established the domiciles of the parties at issue . . . there is not complete diversity" because Plaintiff and the Individual Defendants "are all Californians." (Mot. at 7.) The Court disagrees. In support of the Notice of Removal and Opposition to the Motion to Remand, Defendants submitted declarations of the Individual Defendants confirming the Individual Defendants' current addresses are, and at this action was filed were, located in Kansas and that the Individual Defendants are, and at the time this action was filed were, citizens of Kansas. (*See* Ely Decl. ¶¶ 3-4; Turner Decl. ¶¶ 8-9.) Given the absence of any evidence to the contrary, the Court finds the Individual Defendants are citizens of Kansas.

The complete diversity requirement is therefore satisfied because Plaintiff is a citizen of California, the Individual Defendants are citizens of Kansas, and HNTB is a citizen of Delaware and Missouri.[5]

### C. The Amount in Controversy Requirement Is Met

The Court must decide whether Defendants have demonstrated that the amount in controversy exceeds $75,000. Plaintiff's complaint seeks damages for past and future lost wages and employment benefits, emotional distress, attorneys' fees and costs, pre-judgment and post-judgment interest, and punitive damages, and specifies

---

[5] A corporation is a "citizen" both of the state in which it was incorporated and the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c).

7.

that the amount sought exceeds $25,000. (*See* Compl. ¶¶ 13-15, 16; *see also* Compl. at 16 (prayer for relief).) The Court finds Defendants have satisfied their burden of plausibly alleging an amount in controversy exceeding $75,000 in their Notice of Removal. Accordingly, the Court must determine whether Defendants have met their burden by presenting evidence establishing, by a preponderance of the evidence, that the jurisdictional amount in controversy is satisfied.

### 1. Past and Future Lost Wages and Employment Benefits

Defendants assert that lost wages should be based on the length of time from termination through the date of trial, which Defendants estimate is one year from the date of removal. (Removal ¶ 24; Opp'n at 12.)

In support of removal and their opposition, Defendants submitted the declaration of HNTB's Senior Benefits Analyst (and defendant) Amy Turner, in which she declared that on the date of Plaintiff's termination, Plaintiff's annual salary was $61,900.80 and her hourly rate was $29.76. (Turner Decl. ¶ 5.)

Plaintiff was terminated on January 25, 2018, and Defendants filed their Notice of Removal on September 20, 2018—a period of approximately 34 weeks. Based on Plaintiff's annual salary of $61,900.80, Plaintiff's weekly salary was approximately $1190.40 per week ($61,900.80 divided by 52 weeks). Therefore, Plaintiff's lost wages at the time of removal were at least $40,473.60 ($1190.40 per week multiplied by 34 weeks).

The Court may also include other benefits in the lost wages analysis. *See Melendez v. HMS Host Family Rests., Inc.,* No. CV 11-3842 ODW (CWx), 2011 WL 3760058, at *3 (C.D. Cal. Aug. 25, 2011). Here, Turner declared that Plaintiff received employment benefits[6] that totaled $12,816.72 annually. (Turner Decl. ¶¶ 5-

---

[6] Specifically, Turner declared Plaintiff received the following benefits at HNTB's cost: medical; dental; vision; supplemental life insurance (three times Plaintiff's annual salary); paid holidays (worth $29.76 per hour for nine holidays); paid time off (worth $29.76 per hour for 120 hours of paid time off per year); sick time (worth $29.76 per hour for 56 hours of sick time per year); short-term disability; long-term

7.) Plaintiff's employment benefits are worth approximately $246.48 per week ($12,816.72 divided by 52 weeks). Plaintiff's past lost employment benefits are therefore worth $8,380.32 ($246.48 multiplied by 34 weeks).

Accordingly, the total amount of Plaintiff's past lost wages and employment benefits, for purposes of jurisdiction, is at least $48,853.92 ($40,473.60 in lost past wages plus $8,380.32 for lost employment benefits).

"Because Plaintiff 'claims at the time of removal that her termination caused her to lose future wages, . . . then there is no question that future wages are "at stake" in the litigation, whatever the likelihood that she will actually recover them.'" *Molina v. Target Corp.*, No. CV 18-03181-RSWL-FFM, 2018 WL 3935347, at *3 (C.D. Cal. Aug. 14, 2018) (quoting *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018)). Therefore, the Court must also consider lost *future*[7] wages from the date of removal until trial.[8] The parties have not set a trial date; however, the Court finds

---

disability; life insurance basic in the sum of $124,000; life insurance AD&D in the sum of $124,000; disability insurance in the sum of $818.40; 401k with company match of sixty percent of first $1,600; ESOP with company match of fifty percent of first $4,000. (Turner Decl. ¶ 6.)

[7] In the notice of removal and opposition, Defendants refer to wages from the date of removal to the date of trial as "*back pay*." (Removal ¶ 24; Opp'n at 11-12.) The weight of authority, however, requires the Court to ascertain jurisdiction at the *time of removal*. *Fortescue v. Ecolab Inc.*, 2014 WL 296755, at *2 (C.D. Cal. Jan. 28, 2014) ("[I]n determining the amount in controversy, the court declines to project lost wages forward to some hypothetical trial date."); *Soto v. Kroger Co.*, 2013 WL 3071267, *3 (C.D. Cal. June 17, 2013); *see also Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1032 (N.D. Cal. 2002) (limiting amount of lost wages considered in amount in controversy to those accrued at time of removal). Accordingly, the Court separates lost wages into two categories: past wages—i.e., lost wages between the date of Plaintiff's termination and the date of removal—and future wages—i.e., lost wages between the date of removal and trial.

[8] At the hearing, Plaintiff argued she will likely find gainful employment before trial, and therefore, any amount for future lost wages is speculative. "Such mitigation, however, is inapplicable to the amount-in-controversy calculation." *Molina v. Target Corp.*, No. CV 18-03181-RSWL-FFM, 2018 WL 3935347, at *3 (C.D. Cal. Aug. 14, 2018); *see also Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010) ("[I]f a district court had to evaluate every possible defense that could reduce recovery below the jurisdictional amount the district court would essentially

Defendants' proposed date of trial for purposes of this motion—one year from the date of removal—is a conservative estimate of the trial date. (*See* Removal ¶ 24; Opp'n at 11-12.) Therefore, Plaintiff's future wages at stake is $61,900.80, the amount of Plaintiff's annual salary.[9]

The sum of Plaintiff's past and future lost wages is $102,374.40; the sum of past and future lost wages and past employment benefits is $110,754.72.

### 2. Emotional Distress and Punitive Damages

Plaintiff's complaint seeks unspecified damages for emotional distress. (*See generally* Compl.) Emotional distress damages are properly considered in the amount in controversy for jurisdiction purposes. *See, e.g., Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *Cain v. Hartford Life & Acc. Ins. Co.*, 890 F. Supp. 2d 1246, 1250 (C.D. Cal. 2012); *see also Simmons*, 209 F. Supp. 2d at 1034. "To establish the amount of emotional distress in controversy, a defendant may introduce evidence of jury verdicts in other cases." *Cain*, 890 F. Supp. 2d at 1250 (citing *Rivera v. Costco Wholesale Corp.*, No. C 08-02202 CW, 2008 WL 2740399, at *1 (N.D. Cal. July 11, 2008)). Defendants cite several cases that consider other emotional distress awards for purposes of deciding a motion to remand or in affirming awards for emotional distress in other employment discrimination or retaliation cases, where emotional distress damages ranged from $30,000 to $3.5 million. (*See* Removal ¶ 28.)

Plaintiff also seeks an unspecified amount in punitive damages. "It is well established that punitive damages are part of the amount in controversy" for purposes of establishing diversity jurisdiction. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001); *see Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.*, 320 U.S. 238, 240 (1943). In order to establish probable punitive damages, a party asserting

---

have to decide the merits of the case before it could determine if it had subject matter jurisdiction.").

[9] The Court finds it is unnecessary to calculate or address future lost employment benefits given that the sum of lost past and future wages and past employment benefits substantially exceeds $75,000.

federal diversity jurisdiction may also introduce evidence of jury verdicts in cases involving analogous facts." *Surber v. Reliance Nat. Indem. Co.*, 110 F. Supp. 2d 1227, 1232 (N.D. Cal. 2000). Defendants have neither cited cases nor produced any evidence of jury verdicts awarding punitive damages. (*See* Removal ¶ 29.) Instead, Defendants rely on Supreme Court cases that held punitive damages must bear a "reasonable relationship" to actual damages and found "punitive damages of four times the amount of action damages, while 'close to the line,' of being excessive, were still constitutional." (*Id.* (citations omitted).) From there, Defendants conclude that "Plaintiff's punitive damage claim could range from $195,000 to over $330,000" based on the "economic damages figures for backpay." (*Id.*)

Without deciding whether this case is sufficiently analogous to those cited by Defendants, or quantifying the exact value of Plaintiff's claims for emotional distress or punitive damages, the Court recognizes that emotional distress and punitive damages are more likely than not to be more than nominal. *See Hurd v. Am. Income Life Ins.*, No. CV-13-05205 RSWL-MRW, 2013 WL 5575073, at *7 (C.D. Cal. Oct. 10, 2013) ("Punitive damages and emotional distress damages in disability discrimination cases can be 'substantial' even when lost wages fall short of the jurisdictional minimum."). In other words, they are likely worth at least $1 each.

### 3. Attorneys' Fees

Defendants correctly note that attorneys' fees may be considered for purposes of determining whether the amount in controversy requirement is met. (Removal ¶ 30.) However, a "district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the defendant fails to satisfy this burden of proof." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 795 (9th Cir. 2018).

In the Notice of Removal, Defendants assert that "Plaintiff's attorneys' fees alone would exceed $75,000" assuming only "one of Plaintiff's FEHA causes of action[] is litigated through trial." (Removal ¶ 30.) Defendants fail to provide the

11.

specific estimate of attorneys' fees, hourly rates, or evidence of attorneys' fees in similar cases. The Court will not include attorneys' fees in the amount in controversy calculation because the estimated attorneys' fees that could be awarded is speculative. *See Eberle v. Jaguar Land Rover N. Am., LLC*, No. 2:18-cv-06650-VAP-PLA, 2018 WL 4674598, at *3 (C.D. Cal. Sept. 26, 2018) ("Defendant has merely indicated that while it 'is presently unaware of Plaintiff's counsel [sic] hourly rate, it reasonably anticipates the fees "likely to be expended" in this case will be in excess of the "less than $5,000" amount stated in Plaintiff's motion.' This is not enough.") (citation omitted).

### 4. Aggregation of Claims

The amount in controversy, for purposes of jurisdiction, is the total "amount at stake in the underlying litigation." *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005). As stated above, the Court finds that there is at least $102,374.40 in lost past and future wages, $8,380.32 in lost past employment benefits, $1 in emotional distress, and $1 in punitive damages at stake. Accordingly, the Court is persuaded that Defendants have established by a preponderance of the evidence that, when viewed in combination, Plaintiff's claims exceed $75,000, exclusive of interest and costs.

### D. The Forum Defendant Rule Does Not Apply

Even if diversity jurisdiction is present, 28 U.S.C. § 1441(b) prohibits removal if one or more of the named defendants is a citizen of the forum state, i.e., California, in the instant action. The statute states, in pertinent part, that a case can be removed based on diversity jurisdiction "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b); *see also Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 939 (9th Cir. 2006). This is known as the "forum defendant" or "local defendant" rule.

Plaintiff contends the forum defendant rule applies here. The Court disagrees because, as explained above, none of the named defendants are citizens of California.

## V. CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's Motion to Remand.

**IT IS SO ORDERED.**

Dated: December 03, 2018

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE